IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

KAMAL K. PATEL,                    §
                                   §
          Plaintiff,               §
                                   §
VS.                                §   NO. 4:05-CV-083-A
                                   §
UNITED STATES OF AMERICA,          §
                                   §
          Defendant.               §

MEMORANDUM OPINION
and
ORDER ON MOTIONS TO STRIKE AND FOR SANCTIONS

Because they involve somewhat related issues, the court is
dealing in this order with the requests for relief urged by
plaintiff in the following documents he has filed in the above-
captioned case:

> Motion for Sanctions Under Rules 11 & 56 or Other
> Appropriate Sanctions Against Defendant and E.J. Prince
> for Perjury ("Motion for Sanctions"), filed January 10,
> 2006;
>
> Memorandum Brief in Support of Motion for Sanctions
> Under Rules 11 & 56 or Other Appropriate Sanctions
> Against Defendant and E.J. Prince for Perjury ("Motion
> for Sanctions Memo"), filed January 10, 2006;
>
> Motion to Strike Defendant's Summary Judgment Proof
> ("Motion to Strike"), filed January 10, 2006;
>
> Memorandum Brief in Support of Plaintiff's Motion to
> Strike Defendant's Summary Judgment Proof ("Motion to
> Strike Memo"), filed January 10, 2006;
>
> Plaintiff's Surreply in Relation to Motion for
> Sanctions for Perjury Committed by Dr. E. J. Prince
> ("Surreply"), filed February 16, 2006; and
>
> Plaintiff's Filing of a Supplemental Exhibit . . . in
> Support of His Motion for Sanctions for Perjury
> ("Supplemental Exhibit"), filed January 27, 2006.

I.

The Motion for Sanctions

The thrust of the Motion for Sanctions is that defendant, United States of America, supported her motion for summary judgment, as amended, with a perjurious declaration of E. J. Prince, M.D. ("Prince").[1]  The Prince declaration in question is under tab 2 at pages 33-34 of the appendix defendant filed December 20, 2005, in support of her first amended motion for summary judgment.  Prince is the employee of the Bureau of Prisons who serves as the Clinical Director of the Federal Correctional Complex at Forrest City, Arkansas ("FCC Forrest City").  Plaintiff contends that Prince's declaration falsely relates facts concerning whether he had a need for cervical traction and the reason why he had not received it at FCC Forrest City where he is confined.  In the declaration, Prince said:

> The plaintiff has not been denied cervical traction while at FCC Forrest City because of alleged inadequate facilities.  The plaintiff has not received cervical

---

[1]In the Motion for Sanctions Memo, plaintiff mentions another complaint plaintiff has with defendant's summary judgment response. He is critical of the government for placing reliance on the report of F. Gregory Wolf, M.D. ("Wolf") dated March 16, 2005, by which Wolf related to Prince Wolf's observations from an examination of plaintiff Wolf conducted in late 2004.  Plaintiff maintains that personnel at FCC Forrest City tricked him into submitting to an examination by Wolf by the representation to plaintiff that the examination was related to his treatment when, in fact, it was an examination made at the request of the office of a United States Attorney in Arkansas for use in litigation between plaintiff and the government pending in a United States District Court in Arkansas. Because the Wolf report was not mentioned in the Motion for Sanctions, but was mentioned only in the supporting memorandum and the Surreply, the court is not discussing the Wolf matter under The Motion for Sanctions heading.  However, the court is discussing it under The Motion to Strike heading inasmuch as the Wolf matter is the main subject of that motion.

> traction while at FCC Forrest City because it was the
> judgment of medical personnel at FCC Forrest City that
> such treatment was not medically necessary.

App. filed Dec. 20, 2005, at 34.

Plaintiff supports his motion with a document he obtained

from defendant through a Freedom of Information Request titled

"Medical/Surgical and Psychiatric Referral Request" ("Referral

Request").  Mot. for Sanctions Memo, Ex. 2.  The Referral

Request, which is dated November 4, 2004, shows that it was

prepared and signed by Prince.  It is a request by FCC Forrest

City to the Washington, D.C., office of the Federal Bureau of

Prisons seeking a transfer of plaintiff from FCC Forrest City to

another prison facility.  A "Principal reason" given by Prince

for the request was plaintiff's need for "Physical Therapy to

include Cervical Traction."  Id. at 1.  In the narrative summary

part of the Referral Request, Prince explains plaintiff's need

for the physical therapy, including cervical traction, with the

following language:

> Mr. Patel is a 35 year old inmate diagnosed with left
> C-7 Radiculopathy.  This condition has been worsening
> to the point of generalized numbness of the left arm
> and weaknes [sic] of the left hand grip.  He received
> Neurology consults to include EMG/NCV studies on April
> and June, 2004.  Both tests and consults revealed
> asymmetry of the muscles of his upper limbs with
> atrophy on the left, and weakness of the wrist
> extensors, finger extensors and grip on the left side.
> The diagnosis was confirmed, and physical therapy was
> recommended.  On July 8, 2004, he received a
> consultation with the Physical Therapist in which neck
> exercises were recommended.  This patient [sic]
> condition did not improve with the recommended therapy.
> On October 14, 2004, the patient was seen again by the
> Physical Therapist and he recommended Intermittent
> Cervical Traction daily for two weeks, followed by
> another six weeks of Intermittent Cervical Traction

3

combined with Static Cervical Traction.  The Physical
Therapist report indicated, the failure of the
condition to improve after the therapy sessions may
indicate the need of surgical intervention.  Mr.
Patel's medical records show physical therapy for this
condition has been started at other institutions, but
due to non-medical transfers, it has never been
concluded.

Id. at 2 (emphasis added).

Of interest, the copy of the Referral Request plaintiff
attached to the Motion for Sanctions Memo does not have any text
under the heading "[i]f treatment cannot be obtained in the
community or provided locally, explain why."  Id. at 3.
Plaintiff attached to the Supplemental Exhibit another copy of
the Referral Request, with the explanations that the second copy
was an item he received from the government pursuant to a
discovery request,[2] and that it was more complete than the first
in the sense that it contains language that the government
redacted from the first.  The unredacted copy discloses under the
heading "[i]f treatment cannot be obtained in the community or
provided locally, explain why" that Prince told the Washington,

---

[2]Plaintiff asserts in the Surreply that defendant withheld the
Referral Request from plaintiff when she responded to his first set
of discovery asking for all medical documents, and that defendant has
never explained why she failed to produce the document as she should
have in response to that discovery request.  He surmises that
defendant finally disclosed the document to him when he specifically
requested it in a second discovery request only because defendant and
her counsel became aware at that time that "the cat was already out
of the bag," i.e., plaintiff had already learned of the document's
existence.  Plaintiff's surmise is a reasonable one, and gives rise
to significant concern on the part of the court relative to the
conduct of defendant and her counsel.

D.C., office the following as part of the request that plaintiff be transferred:

> This patient requires extensive daily physical therapy, our institution is not equipped to provide the needed therapy.  Sending this patient on a daily medical trip for eight consecutive weeks is clearly a security concern.  We are requesting a transfer to an institution where his recommended physical therapy's [sic] needs can be provided.  The delay on the therapy may cause irreversible damage to this inmate.

Supplemental Ex., Ex. A at 3.

The government responded to the Motion for Sanctions by a document filed January 30, 2006.  The response was predicated on, <u>inter alia</u>, another declaration of Prince.  In the second declaration Prince states that she stands by the accuracy of her first declaration, and that "[i]t was and is my clinical judgment that plaintiff Kamal K. Patel does not require cervical traction therapy."  App. filed Jan. 30, 2006, at 1.  Prince went on to declare that the facts recited in the Referral Request that she signed and prepared in November 4, 2004, were false in the sense that they did not represent her opinions, but that she prepared the request for transfer because of her belief that "the request presented an opportunity for a high-level BOP physician, the Chief of Health Programs, to review the plaintiff's status and

confirm [Prince's] own assessment that cervical traction was not medically necessary for the plaintiff's condition."[3]  Id. at 2.

The government's response also was accompanied by a declaration of Jose Jimenez ("Jimenez"), another employee of the Bureau of Prisons stationed at FCC Forrest City, who said that he participated in drafting the Referral Request,[4] and that, in doing so, he "wrote as strong a case for transfer as [he] could in an effort to effectuate the plaintiff's transfer."  Id. at 5. In effect, Jimenez said in his declaration that the Referral Request was provided to Washington, D.C., in an attempt to persuade the home office, so to speak, to transfer plaintiff to another prison facility so that FCC Forrest City would be relieved of what it saw as a problem inmate.[5]

---

[3]In her second affidavit, Prince gave contradictory explanations of why the Referral Request was made.  Her other version of why it was made was as follows:

> [B]ecause Patel had made, and continued to make, numerous demands regarding his medical care for his cervical radiculopathy condition as well as other conditions, it was decided by FCC Forrest City administration that perhaps a transfer would be appropriate and the issue was routed to the Office of Medical Designations and Transportation (OMDT) at the BOP Central Office in Washington, D.C.

App. filed Jan. 30, 2006, at 2.

[4]Jimenez says in his affidavit that he "prepared" the Referral Request.  App. filed Jan. 30, 2006, at 4.  However, the Referral Request shows on its face that it was prepared by Prince.  Mot. for Sanctions Memo, Ex. 2.

[5]In partial explanation for why he and Prince prepared and submitted the Referral Request, Jimenez said:

> Rather, at the time I wrote the transfer referral, it had become clear that the plaintiff and medical staff of FCC Forrest City were not, and would not be, in agreement as

(continued...)

The officials in Washington, D.C., rejected the Referral Request.  Plaintiff makes the point that only after the rejection did Prince and those collaborating with her start taking the position that, contrary to what Prince had said in the Referral Request, plaintiff had no need for physical therapy that included cervical traction.

Plaintiff asks the court to impose sanctions for the conduct mentioned above under the authority of Rules 11 and 56(g) of the Federal Rules of Civil Procedure.  As dismayed as the court is with the conduct of Prince and the government, the court questions whether the record at this time is sufficient to support the imposition of the sanctions requested by plaintiff. Obviously, Prince has given false information.  But, it might well be that the declarations of Prince (if the internal inconsistencies are overlooked) present true facts and that the statements made by Prince in the Referral Request are the false facts.  Prince and Jimenez both maintain that they put false information in the Referral Request in an attempt to dupe the Washington, D.C., officials into causing plaintiff to be

---

[5](...continued)
to the medical care which was medically necessary for him to receive.  The plaintiff had lodged numerous complaints and made numerous demands regarding his care. Additionally, the plaintiff himself verbally requested on multiple occasions that I make arrangements for his transfer to a medical referral center.  The administration at FCC Forrest City, specifically former Associate Warden Gregory Thompson, therefore asked me to prepare a transfer memorandum.

App. filed Jan. 30, 2006, at 5.

transferred to another prison facility.  The court is not prepared at this time to make a decision as to which of the statements made by Prince are the false ones.

If, upon further development of the record, the court concludes that Prince made false statements in the declarations on which defendant relies in papers she filed in this case, the court will be in a position at that time to give consideration to the imposition of appropriate sanctions against defendant, counsel for defendant, or Prince, or perhaps two or all of them.[6] The court has decided to deny the Motion for Sanctions without prejudice at this time, with the thought that the issues raised by the motion can be revisited at a future date.

However, the court is ordering, not as a sanction but for the benefit of the management of the Bureau of Prisons, that a copy of this memorandum opinion and order be provided to the Director of the Bureau of Prisons.  The court is satisfied that the Director will wish to conduct an inquiry into the facts that

─────────────

[6]This is not the first time in this action that the court has been required to devote time and attention to inappropriate conduct on the part of defendant and her counsel.  See Nov. 4, 2005, order.  On the earlier occasion, the court granted plaintiff's motion to strike impertinent and scandalous matter in the answer filed by United States of America in this action.  The motion to strike was prompted by a false allegation in defendant's answer to the complaint that plaintiff was transferred from one prison facility to another due to his assaulting another inmate with serious injury.  Defendant did not deny that the allegation was false.  The court gave defendant and her counsel the benefit of the doubt by not imposing sanctions, but "the court nonetheless strongly caution[ed] defendant to be careful as to the accuracy of statements contained in pleadings filed in this court."  Nov. 4, 2005, order at 2.

are disclosed by this order and to take appropriate action based on the results of that inquiry.

II.

<u>The Motion to Strike</u>

Inasmuch as the Motion to Strike asks the court to strike from the record items of proof offered by defendant in support of her motion for summary judgment, the Motion to Strike is moot, bearing in mind that the court has denied defendant's motion. However, because the issue raised by the Motion to Strike could be a recurring problem, the court, nevertheless, is discussing the facts on which the motion is based.

Defendant tendered to the court in support of her motion for summary judgment, as amended, a copy of a report prepared by F. Gregory Wolf, M.D. ("Wolf") under date of November 30, 2004, pertaining to Wolf's medical examination and evaluation of plaintiff.  App. filed Dec. 20, 2005, at 30.  Plaintiff argues in the Motion to Strike Memo that the Wolf report was obtained by deceit practiced by the government on plaintiff.  An exhibit to the Motion to Strike Memo is a declaration of plaintiff, in which he declares:

> I state that in regards to the examination by Dr. Wolf
> which is the report attached to the defendant's motion
> for summary judgment as Exhibit One, Pages 30 through
> 32, I was not informed at the time of the exam or at
> any time before the exam that this exam was for the
> United States' litigation at the request of the United
> States Attorney's office.  I was told by Dr. Prince
> that the exam was being conducted in furtherance of my
> medical treatment.  I did not become aware that the
> exam was for the United States Attorney's Office until
> I read a letter sent by Dr. Wolf in which he stated
> that he was contracted by the United States Attorney,

9

letter is attached to the instant referenced motion as
Exhibit Four.

Mot. to Strike Mem., Ex. 3.  The "Exhibit Four" mentioned in the

quoted language is a March 16, 2005, letter from Wolf to Prince,

stating in its opening paragraph:

> I am writing you with regard to Kamal Patel.  You may
> recall that I was contracted by the assistant US
> attorney to perform an impairment rating on Mr. Patel
> on 11/30/04.  This was for evaluation only and not for
> treatment.

Id., Ex. 4.

On January 30, 2006, defendant responded to the Motion to

Strike.  Defendant asserts that she saw nothing wrong with Prince

using the contents of Wolf's report in determining the medically

appropriate care for plaintiff.  Resp. to Mot. to Strike, at 4.

The government in effect admits the accuracy of plaintiff's

contention that he was caused to be examined and evaluated by

Wolf through the deceitful conduct of the government.  See id.,

App. at 6-7, ¶ 6.  Thus, plaintiff's accusations relative to the

Wolf report remain unchallenged.

The best defendant could do in defense of her apparently

improper conduct in subjecting plaintiff to an examination and

evaluation by Wolf was to assert in her response to the Motion to

Strike that:

> Here, although Patel asserts that he did not know the
> chain of events leading to the [Wolf] examination, he
> does not assert that he objected to the examination,
> nor can he dispute that whatever the impetus for the
> evaluation, Dr. Prince has used that report in
> considering the appropriate course of care for him.
> See Appx. 2, p. 007.  Further, had leave been sought,
> "good cause" clearly existed for obtaining such a
> comprehensive evaluation of Patel, as he has been at

10

odds with the medical staff of almost every facility in
which he has been incarcerated over what care is
reasonably and medically necessary for him to receive.
Including appeals, he has filed some 40 administrative
remedies regarding his medical care since his
incarceration began in 1993.

Resp. to Mot. to Strike, at 5-6.  The quoted statement is
supported by the declaration of Paul Irby, an employee of the
Dallas office of the Bureau of Prisons.  Mr. Irby makes the
following disclosures:

5.   BOP records reflect that the plaintiff has
successfully filed over 350 Administrative Remedy
requests and/or appeals since his incarceration with
the BOP began in March 1993.  This number excludes all
filing attempts which were rejected as improperly
filed.

6.   Based upon the available SENTRY abstracts of the
plaintiff's successfully filed Administrative Remedy
requests and appeals, it appears approximately 40 of
those submissions concerned treatment for his various
medical conditions.  This number of submissions counts
appeals of denied Administrative Remedy requests as
separate submissions.  Of those approximately 40
submissions, SENTRY indicates at least 20 were a
Request for Administrative Remedy filed at the
institution level.

7.   My search of SENTRY revealed the plaintiff has
successfully filed over 100 Administrative Remedy
requests or appeals since his transfer to the Federal
Correctional Complex (FCC) at Forrest City, Arkansas,
on February 2, 2004.  Of these submissions, the
plaintiff has successfully filed approximately three
Requests for Administrative Remedy presenting new
medical complaints.

Id., App. at 22-23.  Thus, defendant seems to be taking the
rather unusual position that plaintiff's repeated successes in
the filing of complaints about the medical treatment he has
received since becoming an inmate of the Bureau of Prisons could
form the basis for an involuntary medical examination of

plaintiff at defendant's behest for use against him in litigation.

As previously noted, the Motion to Strike is moot, but the court is making known now that it does have concern with what appears to be deceitful conduct on the part of the government in obtaining the examination and evaluation of plaintiff by Wolf. If the government again relies on Wolf's report in this litigation, the court will further consider plaintiff's complaints relative to the Wolf report.

III.

Order

For the reasons stated above,

The court ORDERS that:

(1)  The relief sought by the Motion for Sanctions be, and is hereby, DENIED without prejudice;

(2)  The relief sought by the Motion to Strike be, and is hereby, DENIED as moot;

(3)  By March 3, 2006, counsel for the government shall provide a copy of this memorandum opinion and order to the Director of the Bureau of Prisons with an appropriate cover letter explaining why the order is being provided; and

12

(4)  By March 8, 2006, counsel for the government shall file with the papers in this action proof that the directive of (3) above has been complied with.

SIGNED February 24, 2006.


_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge